In re Albert M. GOBLICK and Mary Jean Goblick, Debtors.

MANHATTAN LEASING SYSTEMS, INC., Plaintiff,

v.

Albert M. GOBLICK and Mary Jean Goblick, Defendants.

LAZZARA OIL COMPANY, Plaintiff,

v.

Albert M. GOBLICK, Defendant.

Margaret PLUMB, Plaintiff,

v.

Albert M. GOBLICK and Mary Jean Goblick, Defendants.

Bankruptcy No. 88–0051–8P7.
Adv. Nos. 88–91, 88–98 and 88–100.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 8, 1988.

Larry Foyle, Kass, Hodges & Massari, P.A., for plaintiff, Manhattan Leasing, Inc.

Denis A. Cohrs, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., for plaintiff, Lazzara Oil Co.

Peter J. Kelly, Shackleford, Farrior, Stallings & Evans, P.A., for plaintiff, Margaret Plumb.

Harvey Paul Muslin, Harvey Paul Muslin, P.A., for defendant's, Albert and Mary Jean Goblick.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the right of Albert M. and Mary Jean Goblick (Debtors) to a general bankruptcy discharge. The Debtors' right to discharge is challenged in three separate adversary proceedings: one filed by Manhattan Leasing Systems, Inc. (Manhattan Leasing), Adversary No. 88-0091-8P7; the second by Lazzara Oil Company (Lazarra Oil), Adversary No. 88-0098-8P7; and the third by Margaret Plumb (Margaret Plumb), Adversary No. 88-100-8P7, respectively.

The challenge to the Debtors' right to a general discharge in Adversary No. 88-0091 filed by Manhattan Leasing is set forth in five separate counts. While the sufficiency of the pleadings was not challenged by the Debtors, it is evident that most of them are plead in very vague and nonspecific general terms and some of them do not even state a viable cause of action under § 727 of the Bankruptcy Code. In sum, the only viable claims which emerge from the Complaint filed by Manhattan Leasing are charges that the Debtors have failed to keep adequate books and records from which their financial condition can be ascertained (§ 727(a)(3)), and again although not very clearly plead, that the Debtors have failed to explain satisfactorily their loss of assets to meet their liabilities (§ 727(a)(5)), and that the Debtors committed a "falsehood" in their Statement of Financial Affairs by untruthfully answering certain specified questions (§ 727(a)(4)).

The challenge to the Debtors' right to a general bankruptcy discharge in Adversary No. 88-0098 instituted by Lazzara Oil is based on § 727(a)(3) and (a)(4) of the Bankruptcy Code. However, the only possible viable claim asserted in this Complaint is based on the allegation that the Debtors have failed to keep adequate books and records (§ 727(a)(3)). The Debtors' right to discharge is challenged in Adversary No. 88-0100 instituted by Margaret Plumb and is based on § 727(a)(5) alleging that the Debtors have failed to explain satisfactorily the loss of their assets or deficiency of their assets to meet their liabilities. In addition it also seeks a determination that the debt owed by Mr. Goblick to Margaret Plumb is nondischargeable.

By agreement of the parties all three adversary proceedings were consolidated for trial with the proviso that only the claims relating to the Debtors' general discharge will be tried initially and the claim asserted by Margaret Plumb seeking a determination of nondischargeability of the debt owed to her will be deferred pending resolution of the threshold issue which is whether or not these Debtors are entitled to the protection of the general bankruptcy discharge.

At the duly scheduled final evidentiary hearing, the following facts have been established which are relevant and germane to the issues under consideration.

At the time relevant to this controversy, Mr. Goblick was engaged in extensive, various and sundry business operations. Thus, he was the principal and sole stockholder of the following corporations:

Trans-Star Oil Corporation
Quail Hollow Liquors, Inc.
Big Al's of Delrey, Inc.
Big Al's of Dale Mabry, Inc.
Junction Center, Inc.
Mr. V's, Inc.
ADE Firestone

In addition to these corporate ventures, Mr. Goblick was also involved in real estate transactions and over the years acquired substantial interests in Quail Hollow Estates (170 building lots), a 50% interest in 11 acres of raw land, and a 50% interest in 1.7 acres of raw land. During the time relevant, these corporations maintained their respective general corporate checking accounts in Florida National Bank, University State Bank, Central Bank and Barnett Bank. Mr. Goblick had no personal checking account and the only non-business checking account was maintained by Ms. Goblick, who wrote all checks on the accounts maintained at the University State Bank, NCNB and First National Bank of the South.

From 1983—March 18, 1987, Mr. Goblick submitted several personal financial statements on his own behalf and on behalf of his wife to Barnett Bank of Pasco (Plaintiffs' Composite Exh. No. 3). The last financial statement is dated March 18, 1987, on which Mr. Goblick stated that he is the sole owner of the following assets:

| | |
|---|---:|
| Cash | $ 6,000 |
| U.S. Government Securities | 100,000 |
| Unlisted Stocks and Bonds | 1,675,000 |
| Accounts and Loans Receivable | 337,000 |
| Real Estate | 5,650,000 |
| Automobiles | 200,000 |
| Furniture | 175,000 |
| Livestock (horses) | 325,000 |
| Total | $8,468,000 |

indicating a total value of $8,468,000 or a net worth of $5,110,000.

The Debtors filed their Chapter 7 Petition in January 1988. The Schedule of Assets and Liabilities accompanying their Petition (Plaintiffs' Exh. No. 2) indicates Mr. and Ms. Goblick have a negative net worth of approximately $3 million, or a change from the $5 million positive net worth to $3 million negative in nine months.

As indicated earlier, Mr. Goblick was an entrepreneur engaged in various and sundry businesses on a large scale as distinguished from Ms. Goblick who was not actively engaged in the operation of any business and who had no income of her own and mostly drew checks on the bank accounts maintained by her at the direction of her husband. According to the Statement of Affairs, Mr. Goblick's gross annual earnings in 1986 and 1987 were $20,000 for each year. (Plaintiff's Exh. No. 2) Notwithstanding during the same period of time, Ms. Goblick wrote checks totalling almost $1,000,000 on the bank accounts maintained by her, out of which checks were written for cash or were payable to themselves in excess of $100,000 from July 1986 through May 1988. (Debtors' Exh. Nos. 1–4; Plaintiff's Exh. No. 1) The Debtors presented no documentation to show the disposition of the proceeds of such checks except the statement that they were used to make up checks issued by the various and sundry corporations controlled by Mr. Goblick, which checks were dishonored by the banks for lack of sufficient funds. It further appears that Ms. Goblick failed to produce numerous checks on the bank accounts maintained by her in the First National Bank of the South, University State Bank and NCNB. In explanation for the missing checks, Ms. Goblick stated that they might have been voided or might have been checks written which were returned by the banks for insufficient funds. It is noteworthy that post-Petition Ms. Goblick wrote on the average checks in the amount of $10,000 monthly even though ostensibly Mr. Goblick, the sole income producer in the family, earned not more than $1,000 a week as manager of a cocktail lounge. (Plaintiff's Exh. No. 4)

In sum, the records kept by the Debtors were limited to some of the business activities of Mr. Goblick and check records reflecting the activities on the bank accounts maintained by Ms. Goblick. As to the Debtors' real estate holdings, Mr. Goblick explained the disposition of these, but offered no documents to substantiate the manner of disposition of the same. It is further without dispute that Mr. Goblick scheduled as one of his assets a government security which turned out to be a

certificate of deposit in the amount of $100,000. Mr. Goblick stated at the trial that the certificate of deposit was not his; that it was his father's and placed in a safe deposit box for the benefit of his children; and his father, without his consent, took possession of the certificate of deposit and he never received any part of the proceeds of same. At a § 341 meeting of creditors, Mr. Goblick stated that his father gave him the proceeds of the certificate of deposit and he spent it.

Moreover, Mr. Goblick failed to furnish any documentation as to the disposition of two very significant and important items. First, it is without dispute that Mr. Goblick owned at least three, possibly four horseshoe diamond rings, two of them were allegedly sold by him to Robert Abbot for about $40,000 and the other to Mr. Richard Manbech for approximately $35,000. According to Mr. Goblick, the consideration for this sale was in part some unspecified cash and in part forgiveness of a debt he allegedly owed to these two gentlemen. There is no documentation presented to establish that such debt in fact existed, at all, let alone in what amount, or that in fact, if it existed, was satisfied by Abbot and Manbech. Neither is there any documentation regarding the sale of the rings to either gentlemen. The fact of the matter is that Mr. Goblick did offer one of the rings as collateral to Mr. Michael Lazzara as late as December 15, 1987.

As to the fourth horseshoe diamond ring, Ms. Goblick explained that while in Miami her horseshoe ring was stolen. In response to the question why did she not report the theft to the authorities, Ms. Goblick indicated that she assumed that the ring was taken by her son-in-law.

This leaves for consideration Mr. Goblick's transactions concerning his livestock. Mr. Goblick during the relevant time had at one time as many as 24 race horses and no longer has any. Mr. Goblick's explanation as to the disposition of the horses is "a horse of a different color." There was no documentation presented by Mr. Goblick concerning either the acquisition of these horses, or most importantly, neither concerning the disposition of these horses. He claims he sold some and some were "claimed" in races. In explanation of this latest type of transaction, he indicated that in a given race anyone can claim a horse by putting up a specified amount of money and then after the race may exercise the option and take the horse and the owner of the horse would, of course, retain the money put out for that particular horse. Thus, it appears that the so-called "claim transaction" is really nothing more than the sale of a horse in conjunction with a particular race. Thus, ordinarily the end result would be that the owner transfers ownership of the horse to the claimant and retains the amount of money put out for the horse.

As noted earlier, the claims asserted by these three Plaintiffs that these two Debtors are not entitled to a general bankruptcy discharge are based on § 727(a)(3) and (a)(5) which in pertinent part provide as follows:

## § 727. DISCHARGE

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; ...

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ....

In addition, it was also charged by Manhattan Leasing that the Debtors had committed some unspecified and allegedly fraudulent transfers and concealment by the Debtors and a claim that the Debtors committed false oath by giving false testimony at their meeting of creditors and by stating under penalty of perjury untruthful answers to questions on the Statement of Financial Affairs.

It should be noted at the outset that as a general proposition the provisions dealing with a general bankruptcy discharge are to give a debtor a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934); *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). It is equally clear that there is no question that the burden of proof is placed on the creditor who challenges a debtor's right to a discharge. Bankruptcy Rule 4005; *In re Black,* 787 F.2d 503 (10th Cir.1986). However, when a debtor's right to a discharge is challenged under § 727(a)(3) while the initial burden to establish a claim under § 727(a)(3) is on the objecting creditor, the burden shifts to the debtor who must establish either that the debtor maintained adequate books and records from which the debtor's financial condition could be ascertained or that the failure to keep adequate books and records was justified under the circumstances of the particular case. *In the Matter of Esposito,* 44 B.R. 817 (Bkrtcy.S.D.N.Y. 1984)

The same principles are also applicable concerning the claim based on § 727(a)(5). Thus, once a party objecting to discharge has met the initial burden of proving the objection by producing evidence establishing a basis for that objection, the ultimate burden of persuasion is placed on the debtor. Accordingly, once it has been established that the debtor has a cognizable ownership interest in a specific identifiable property at any given time not too far removed in time from the date of filing his petition, the burden shifts to the debtor to explain satisfactorily the loss of that particular asset if at the time the petition is filed, the debtor claims that it no longer has the particular property. *In re Chalik,* 748 F.2d 616 (11th Cir.1984), 4 *Collier on Bankruptcy,* ¶ 727.08 (15th Ed. 1984). The explanation furnished by the Debtor must be satisfactory and must be strong enough to convince the trier of fact. *In re Shapiro and Ornish,* 37 F.2d 403 (N.D.Tex.1929), *aff'd,* 37 F.2d 407 (5th Cir. 1930). While *In re Shapiro and Ornis,*

*id.,* was decided under the Act of 1898, the current version of the previous § 14(c)(7) is substantially the same, § 727(a)(5). Therefore, cases decided under the Act are still relevant. *See In re Martin,* 698 F.2d 883 (7th Cir.1983) Vague and indefinite explanations of losses such as "monies were spent" or "lost through gambling" without documents is unacceptable. *In re Reed,* 700 F.2d 986 (5th Cir.1983), *Baum v. Earl Millikin, Inc.,* 359 F.2d 811 (7th Cir.1966).

Viewing the facts as developed in this case, this Court is satisfied that Mr. Goblick failed to keep adequate books and records from which his financial condition can be ascertained, and his failure to do so is not justified under the circumstances. The record leaves no doubt that Mr. Goblick was an entrepreneur engaged in a large-scale multitude of complex financial transactions and in spite of his claimed modest income, accumulated a net worth at one time in excess of $5,000,000 eight months prior to the filing of his Petition in bankruptcy and had check transactions written by Ms. Goblick close to $1,000,000. At the § 341 meeting, Mr. Goblick stated that he has no records and documents to back up and establish the loss of his net worth in eight months' time. While it is true that the duty to keep books and records is not absolute and all depends on the circumstances, there is hardly any question that a man who substantially has a net worth eight months before bankruptcy in excess of $5,000,000 and a negative net worth of $3,000,000 before the date of bankruptcy should have extensive books, records and documents which would shed light as to his true financial condition and also would assist in understanding what happened to the disposition of the assets which allegedly occurred during the short time frame mentioned. Mr. Goblick maintained no checking account and the accounts were maintained by Ms. Goblick. As noted earlier, Ms. Goblick is a housewife with no independent income of her own; neither was she engaged in any job from which she received any revenue. Thus, while this Court is fully satisfied that Mr. Goblick failed to keep adequate books and records under the circumstances, Ms. Goblick's failure to keep any books and

records concerning her own affairs is justified under the circumstances.

The same statement is equally applicable concerning the charge of Mr. Goblick's failure to explain satisfactorily the loss of assets to meet his liabilities. Mr. Goblick has given two contradictory explanations regarding the certificate of deposit; the first at the § 341 meeting of creditors where he testified that his father gave him the proceeds from the certificate and that he spent these amounts. The second explanation occurred at the final evidentiary hearing where Mr. Goblick testified that the certificate was owned by his father and that he never received any proceeds from the certificate. Next, there is absolutely no documentation to support Mr. Goblick's totally unconvincing explanation that he sold the horseshoe diamond rings to Mr. Abbott and Mr. Manbech. In fact, as noted earlier, there is evidence in the record which reveals that one of the rings was offered by Mr. Goblick as collateral as late as December 15, 1987. Finally, Mr. Goblick has provided no more than an extremely vague explanation regarding the disposition of the horses. In short, this Court as the trier of fact is not convinced as to the disposition of these assets.

The assets, the loss of which have not been satisfactorily explained, were owned by Mr. Goblick and there is nothing in this record to show that Ms. Goblick owned any assets of any value by herself which she no longer has, with the exception of the horseshoe diamond ring. The explanation furnished by her for the loss of her horseshoe diamond ring sounds somewhat awkward, but reviewing the evidence on this point liberally in her favor, this Court is satisfied that it would be unwarranted to deny her discharge based on § 727(a)(5) of the Bankruptcy Code.

Next, concerning the charge of falsehood allegedly committed by Mr. Goblick, this Court is satisfied that the evidence presented is woefully short of the type of proof required to establish this charge. Although it is intimated without any specificity in Count V of the Complaint filed by Manhattan Leasing that both Debtors committed a falsehood in that they stated under penalty of perjury that all assets were listed in bankruptcy and that no properties had been disposed of by them postpetition, there is nothing in this record to substantiate that Ms. Goblick knowingly failed to list any assets. The fact of the matter is there is nothing in this record to show that the Debtors did not list all their assets. Neither is there any evidence of any post-Petition transfers particularly by Ms. Goblick. Thus, the charge based on § 727(a)(4), that is, that the Debtors committed falsehood has not been established and cannot be sustained.

In sum, this Court is satisfied that while the record contains sufficient evidence to warrant the conclusion that Mr. Goblick is not entitled to a bankruptcy discharge for his failure to maintain sufficient books and records from which his financial condition can be ascertained and his failure to satisfactorily explain the loss of his net worth, no such conclusion can be reached based on the charge of falsehood in bankruptcy. Concerning Ms. Goblick, this Court is satisfied that this record is insufficient to deny her discharge on any of the grounds set forth on the three separate Complaints filed by Manhattan Leasing, Lazzara Oil and Margaret Plumb.

A separate Final Judgment will be entered in accordance with the foregoing in each of the three adversary proceedings.