In re John P. WHITE and Sara Beth White, Debtors.

INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,

v.

John P. WHITE and Sara Beth White, Defendants.

Bankruptcy No. 91–10794–8P7.
Adv. No. 91–783.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 1, 1994.

Michael P. Brundage, Tampa, FL, for plaintiff.

Cindy L. Turner, Tampa, FL, for debtors/defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

John P. White and Sarah Beth White, his wife, (Debtors) filed their joint Petition for Relief on August 19, 1991. On their Sched-

112

ule of Liabilities, the Insurance Company of North America (INA) was duly scheduled by the Debtors as an unsecured creditor holding a claim in the amount of $116,791.21. The present adversary proceeding was commenced by INA by filing its Complaint on November 18, 1991. The Complaint which was amended contains three claims set forth in three separate counts. The claim in Count I is based on § 523(a)(2)(B) and is based on the allegation that the Debtors obtained property by submission of a false statement in writing respecting their financial condition; the claim in Count II is filed pursuant to § 727(a)(5) and seeks a denial of the general discharge of the Debtors, based on the allegation that the Debtors failed to explain satisfactorily loss of assets; the claim in Count III is based on the allegation that the Debtors have failed to keep and maintain adequate books and records therefore they are not entitled to the overall protection of the general bankruptcy discharge. At the close of INA's case in chief this Court granted Sarah Beth White's Motion for Involuntary Dismissal pursuant to F.R.B.P. 7041(b) and dismissed all three claims against her with prejudice. This left for consideration the claims asserted by INA against John P. White.

The facts relevant to the remaining claims as established at the final evidentiary hearing are as follows:

John P. White (Debtor) is an attorney, admitted to practice in the States of Georgia and Florida. In addition the Debtor has been active in other fields such as teaching; he was at one time active as a mortgage banker and has been involved in more than 400 real estate closings. The present controversy has its genesis in three real estate ventures known as Wedgewood Gulf Village, Hilltop Apartments and Indian Wood Apartments, all to be discussed later in greater detail.

On November 7, 1984 the Debtor purchased an interest in a Limited Partnership known as Commonwealth Series 24 Oil and Gas Limited Partnership (Commonwealth). As part of this purchase, the Debtor made a $20,000 down-payment and the balance of the purchase price was represented by a promissory note in the principal amount of $80,000 payable to Commonwealth (Commonwealth Note) (INA's Exh. # 4). The Commonwealth Note, which was to be paid in installments, matured on November 30, 1988.

Pursuant to the terms of the Commonwealth Note, it was assigned to Credit Lyonnaise as collateral security for an extension of credit to Commonwealth by Credit Lyonnaise. As part of the assignment of the Commonwealth Note, the limited partners of Commonwealth including the Debtor applied for and obtained from INA an Investor Bond No. K0172858-42 (Investor Bond) (INA's Exh. # 3), issued in favor of Credit Lyonnaise as guaranty of the payment of the Commonwealth Note. In connection with this transaction, the Debtor submitted to INA an Investor Bond Application Form (Bond Application) and delivered to INA a Financial Statement dated September 30, 1984 (INA's Exh. # 1).

Additionally, the Debtor executed an Investor Bond Indemnification and Pledge Agreement (INA's Exh. # 2) agreeing to indemnify and hold harmless INA for any losses and expenses which INA may sustain or incur in connection with the Bond issued by INA. It is without dispute that the Debtor defaulted on his obligation to make the installment payment required by the Note and upon his default Credit Lyonnaise made demand on INA for payment based on the bond. INA responded and paid Credit Lyonnaise $80,000 on behalf of the Debtor. In return, INA sought a reimbursement of the amount it paid pursuant to the Indemnification Agreement. The Debtor failed to satisfy INA's demand for payment. Based on the Debtor's default on January 19, 1987, INA commenced a lawsuit against both Debtors in the Circuit Court for the Tenth Judicial Circuit in and for Polk County Florida and sought a money judgment against the Debtors. On January 10, 1988, the Circuit Court granted INA's Motion for summary Judgment (INA's Exh. # 6) in the amount of $116,791.21 plus interest attorney fees and expenses. On August 27, 1992, the Debtors filed their voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code.

In 1982, the Debtor, together with one Mike Hagle, an airline pilot, and Steven Alex, formed Southmark Development Corporation, which was designed to act as a service corporation to provide advertising, administrative assistance and cost advancing to several large multi-family apartment complexes. Between 1983 and 1987 the Debtor acted as the person in charge of the affairs of Southmark and the several projects it managed. One of these projects was known as Wedgewood Gulf Village (Wedgewood) located in Polk County, Florida. This project was a 240 unit apartment house complex and was completed at the time relevant. The Debtor had a 40 or 41 percent interest in this project, which he valued on the financial statement submitted to INA (INA's Exh. # 1) at $10,700,000, a mortgage indebtedness of $8,500,000, or a net equity of $2,200,000. It is without dispute that this valuation was grossly unrealistic and the Debtor valued the same interest a year later at $890,000, or a drop in value of almost $800,000.

The Debtor computed the value of his interest in Wedgewood by taking the appraised value of the project which was completed, and subtracted, as noted earlier, the balance due on the mortgage which produced the alleged residual value of the project of $2.2 million. In this connection it should be pointed out that the project was owned by Southmark Development Corporation, a general partnership which had developed the project. While the Debtor was a general partner of Southmark, his interest was only approximately 40 percent, and thus obviously the value stated for his interest in Wedgewood was clearly incorrect simply because the remaining interest in the project was set aside for syndication to investors and the valuation by the Debtor included an interest which was neither owned by him nor by Southmark. In sum, the Debtor's interest was only 41 percent, not of the total but only of the 50 percent plus owned by Southmark.

The Debtor was also involved in a project known as Hilltop/Quails Bluff, another real estate development. On the financial statement submitted to INA the Debtor indicated that a value of his 30 percent interest in this project was $274,646. It is now admitted that less than a year later, the value of the Debtor's interest in this project was not more than $105,000, a decrease of $170,000, or almost a 62 percent decrease in a short time.

The last project which is relevant to the matter under consideration involved the Debtor's interest in a project known as Indian Woods. The Debtor valued his interest in his 1984 financial statement at $260,000. In the financial statement prepared 10 months later, in 1985, the same interest was valued at only $39,000, or almost an 85 percent decrease. In addition, the 1984 financial statement submitted to INA in connection with the Debtor's application for the bond failed to disclose a contingent liability of the Debtor which was based on his guaranty of a $250,000 line of credit extended to Southmark by American Bank of Lake Wales.

The last relevant consideration relates to the alleged falsity of the income statement of the Debtor during the years of 1981, 1982 and 1983. In his financial statement submitted to INA, the Debtor indicated his joint taxable income as:

### JOINT TAXABLE INCOME (NET)

| Bond Application | | Tax Return | | Amount of Income Inflation | |
|---|---|---|---|---|---|
| 1981 | $42,912 | 1981 | $42,912 | 1981 | $ 0 |
| 1982 | 24,000 | 1982 | –0– | 1982 | 24,000 |
| 1983 | 34,512 | 1983 | (98,154) | 1983 | 132,666 |
| | | | | TOTAL | $156,666 |

## GROSS INCOME

| Bond Application | | Tax Return | | Amount of Income Inflation | |
|---|---|---|---|---|---|
| 1981 | $180,000 | 1981 | $166,631 | 1981 | $13,369 |
| 1982 | 88,000 | 1982 | 41,870 | 1982 | 46,130 |
| 1983 | 124,000 | 1983 | 87,554 | 1983 | 36,446 |
| | | | | TOTAL | $95,945 |

It is evident from the foregoing that there is a gross discrepancy between his income reported to the Government and the amount stated on his bond application.

Basically, these are the salient facts as developed at the trial on which INA relies in support of its request either to deny the Debtor's discharge in toto pursuant to § 727(a)(3), (5) or, in the alternative, to declare the debt owed by the Debtor to INA as represented by the judgment entered by the Circuit Court to be excepted from the overall protection of the general bankruptcy discharge.

■ It needs no elaborate citations of authority to support the proposition that the discharge provisions of the Code are remedial and were designed by Congress to give the debtor a "new opportunity in life and the clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

■ It is equally true, however, that the right to the protection afforded by the discharge is reserved to honest debtors and for this reason, the Code specifies several grounds which, if established, would warrant to deny the discharge. It is now well established that the standard of proof is merely the preponderance of the evidence, *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1981), *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993) and it is no longer necessary that the plaintiff establish a viable claim under the grounds for denying the discharge set forth in § 727(b) with clear and convincing evidence. C.f., *Matter of Van Horne,* 823 F.2d 1285 (8th Cir.1987); *In re Phillips,* 804 F.2d 930 (6th Cir.1986); *In re Kimzey,* 761 F.2d 421 (7th Cir.1985); *In re Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988); *In re Hunter,* 780 F.2d 1577 (11th Cir.1986).

■ The grounds urged by INA which according to INA would warrant, based on this record, an order denying the Debtor's discharge are § 727(a)(3), the alleged failure of the Debtor to keep adequate books and records and § 727(a)(5), the Debtor's failure to satisfactorily explain loss of assets. Considering the claim of INA based on § 727(a)(3) first it should be noted that the duty to keep books and records is not absolute and a failure to keep books and records may be justified depending on the circumstances. For instance, an individual debtor who has never engaged in business and whose debts are not excessive and are basically routine consumer debts may not be required to maintain any books and records at all, not even banking records. On the other hand, an individual who was extensively involved in various and sundry business affairs and has liabilities in the six or more figures certainly should have extensive and detailed books and records from which the debtor's financial condition and business transactions can be ascertained.

■ In this particular instance the Debtor, no doubt, was engaged extensively in business, albeit mostly as a general partner of a partnership and not individually. Nevertheless, this Court is satisfied that the Debtor did maintain and, in fact, submitted a summary of all records and turned them over to INA. These records were extremely voluminous and took up two large boxes. Thus, it appears that the Debtor did in fact have sufficient books and records but even if not, it should be pointed out that a debtor's discharge should not be denied where the financial records upon which the debtor's right to

a discharge is sought to be denied based on lack of records of a bona fide separate entity such as a corporation and not the lack of records of an individual debtor. *In re Espino,* 806 F.2d 1001 (11th Cir.1986); *In re Tocci,* 34 B.R. 66 (Bankr.S.D.Fla.1983). This Court, in the case of *In re Nguyen,* 100 B.R. 581 (Bankr.M.D.Fla.1989) held that it is not the lack of books and records of a corporation which is relevant but the lack of books and records of individual debtors. A similar holding is the case of *Matter of Hyers,* 70 B.R. 764 (Bankr.M.D.Fla.1987).

Based on the foregoing, this Court is satisfied that INA's claim based on § 727(a)(3) cannot be sustained.

 The last ground urged by INA which would warrant a denial of the Debtor's discharge is asserted pursuant to § 727(a)(5) and is based on the allegation that the Debtor failed to explain satisfactorily loss of assets. To sustain a viable claim under this Section, it is the Plaintiff's burden to establish that the Debtor had interest in a property of some substance not to far removed from the date of the commencement of the case and on the date of the commencement of the case, he no longer had that property and when the Debtor was called upon to explain the non-existence of the property, he was unable to furnish a satisfactory explanation.

In the present instance this charge is based on the undisputed fact that facially there was a tremendous drop in the Debtor's net worth between 1984 and 1985, especially in the value of his interests on the three real estate projects, Wedgewood, Hilltop and Indian Woods. At first blush it is clear that the difference between the stated values on the financial statement furnished to INA and the restated values on the 1985 statement shows a very substantial decrease in value. The explanation furnished by the Debtor lacks sufficient persuasive force but it is really of no consequence simply because it is now conceded that the values stated in the 1984 statement were incorrect and the 1985 values more properly reflected the true value of the Debtor's interest in the three projects. Thus, it is evident that the loss of value was a paper and not an actual economic loss. Thus, when one considers the evidence and

the explanation furnished by the Debtor for the alleged loss of these values, the evidence is at most in equal balance and thus the claim asserted by INA based on § 727(a)(5) cannot be sustained.

 This leaves for consideration the claim of nondischargeability based on § 523(a)(2)(B) of the Bankruptcy Code which provides as follows:

**§ 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . .

 A claim of nondischargeability under this Section admittedly requires proof that the statement in writing which was claimed to be false was submitted with the intent to deceive the entity to whom it was submitted. It is a rare instance indeed when this fraudulent intent is susceptible to direct proof since it would be highly unusual for the Debtor to admit that he did intend to defraud the lender. Thus, the intent must be inferred from the totality of the picture and the attendant circumstances.

 In this connection, it is especially important to consider the debtor and his sophistication or lack of sophistication in business affairs. This particular Debtor, as noted earlier, is an attorney, was heavily involved in large real estate developments, clearly fully aware of the significance of financial statements, and the importance that the financial statements submitted by the borrower be correct. A debtor who was involved in more than 400 real estate closings was aware or should have been aware that

values placed on real estate investments while could be based on subjective evaluation by the owner, clearly must be realistic and especially it should not include valuation of the entire project when clearly the Debtor's interest is not a complete 100 percent ownership but less than one-half.

The Debtor concedes, as he must, that the mistake was more than a million dollar mistake. There is no doubt that he did furnish grossly incorrect values in the 1984 financial statements clearly recklessly, if not intentionally and, as a result, the Debtor painted a grossly distorted picture of his financial condition in his 1984 financial statement and bond application the Debtor painted a grossly distorted picture of his financial condition which was very relevant and material to the transaction and he certainly knew that it would affect INA's decision to issue the bond. *In re Jordan,* 927 F.2d 221, 224 (5th Cir.1991); *Matter of Coston,* 991 F.2d 257 (5th Cir.1993). This conclusion is further fortified by his omission from the 1984 financial statement of his contingent liability on the guaranty of $250,000 and the admitted misstatement of his income for the years of 1982 and 1983.

In sum, this Court is satisfied, based on the totality of the picture, that this Debtor acted recklessly and INA did in fact rely on the same which reliance was reasonable under the circumstances and as a result suffered damages.

Accordingly, while this Court is satisfied that this Debtor should be entitled to a general bankruptcy discharge, the debt owed by the Debtor to INA is within the exception to discharge based on § 523(a)(2)(B).

A separate final judgment will be entered in accordance with the foregoing.