**In the Matter of Douglas R. HOLT, Debtor.**

**DANA FEDERAL CREDIT UNION, Plaintiff,**

v.

**Douglas R. HOLT, Defendant.**

**Bankruptcy No. 95–81370.
Adv. No. 95–80138.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Jan. 9, 1996.

Gary Wilkinson, Florence, AL, for plaintiff.

Cliff E. Wright, Florence, AL, for defendant/debtor.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on a complaint filed by the plaintiff, Dana Federal Credit Union (hereinafter "Dana"), seeking a determination by this Court that the discharge of the debtor/defendant, Douglas R. Holt (hereinafter the "debtor"), is due to be denied pursuant to 11 U.S.C. § 727(a)(4)(A), (5). The trial in this matter was held on the 13th day of December, 1995. Appearing were the debtor, Douglas Holt, debtor's attorney, Cliff Wright, and attorney for Dana, Gary Wilkinson. The Court has considered the complaint, the response of debtor, the documents submitted in support thereof, and the arguments of counsel, and finds and concludes as follows.[1]

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

On September 3, 1988, the debtor executed a note and security agreement to Dana for the purchase of one 1988 Ford Aerostar wherein debtor obligated himself to pay $16,251.46 in $333.00 monthly installments. The note was executed in connection with an open line of credit extended by Dana to the debtor on March 22, 1988. In Schedule F, the debtor listed Dana as holding an unliquidated unsecured claim in the amount of $6,012.87, which included the deficiency on one 1988 Ford Aerostar Van and one credit card account with Dana, making Dana the debtor's largest unsecured creditor. The debtor only has four other unsecured creditors, with each creditor holding an unsecured claim of $300.00 or less. Apparently, the vehicle has been repossessed or has no value. In its complaint, Dana demands judgment for $7926.88, plus interest.

On May 22, 1995, debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. During the months preceding the filing date of the debtor's petition, the debtor was employed by Dana Mobile Fluid Products Division (hereinafter "Dana–Mobile"), as a machinist. When the debtor ceased working for Dana–Mobile, he received a check, dated April 20, 1995, in the amount of $9,162.00 from the company.[2] The debtor is currently employed by Franklin Manufacturing Company (hereinafter "Franklin").

Debtor's primary creditor is Dana, whose claim debtor proposes to discharge in full in his bankruptcy. Debtor's only other creditor with a substantial claim is Vertagreen Credit Union, holding a purchase money security interest in one 1994 Ford F–150 Truck, which debtor has reaffirmed pursuant to section 524.

In its complaint objecting to the discharge of debtor under 11 U.S.C. § 727(a)(4)(A), (5), Dana argues that debtor knowingly and fraudulently made numerous false oaths or accounts in or in connection with the case and that debtor failed to satisfactorily explain the loss of assets that occurred immediately prior to the filing date of debtor's petition, i.e. the $9,162.00 Dana–Mobile check.

In its pleadings, Dana first alleges that the debtor's discharge is due to be denied under section 727(a)(4)(A) of the Code because the debtor committed a false oath or account in or in connection with the case when he inaccurately listed the value of his cash, checking, and savings account interests in his bankruptcy petition. The debtor maintains a joint checking and savings account with his wife at Listerhill Credit Union (hereinafter "Listerhill"). In Schedule B of debtor's bankruptcy petition, the debtor indicated that as of May 22, 1995, he had $7.00 in cash, $400.00 in his checking account, and $25.00 in his savings account. The checking and savings account records maintained by Listerhill indicate that on May 19, 1995, three days before the debtor filed for bankruptcy, his checking account balance was $2,350.38 while his savings account balance was $4,529.63. On that date, the debtor's savings account records further indicate that $4,504.63 was withdrawn from his savings account, depleting the debtor's savings account. However, the debtor denies that he "personally" withdrew said amount from his savings account on May 19, 1995.

Next, Dana alleges that the debtor's discharge is due to be denied under section 727(a)(4)(A) because the debtor committed a false oath in or in connection with the case where the debtor testified at his section 341 meeting, on June 22, 1995, that he did not deposit any of the proceeds from the Dana–Mobile check into either his checking or savings account. At a deposition on August 10, 1995 (hereinafter the "Holt deposition"), the debtor admitted depositing $4,500.00 of the proceeds into his checking account. However, the checking and savings account records maintained by Listerhill Credit Union, indicate that on April 20, 1995, the debtor deposited $4,500.00 into each of his accounts with Listerhill.

Dana alleges that the debtor also committed a false oath in or in connection with the

---

**2.** The Court notes that the parties disagree as to the nature of this check. The debtor contends that Dana–Mobile awarded the check to the debtor for his length of service; and thus, the check is exempt property pursuant to 11 U.S.C. § 522(d)(10)(E). According to Dana, the check was in fact severance pay. The Court does not believe that this issue is relevant to the matter before the Court, and will not further consider the matter.

case within the meaning of section 727(a)(4)(A) wherein the debtor testified at his section 341 meeting that he did not make any extraordinary purchases, debt payments, or make any gifts within the year immediately preceding the filing date of his petition. Bank records maintained by Listerhill indicate that during the month immediately preceding the filing date of the debtor's petition, the debtor spent approximately $2,000.00 more than his earned income.

Dana further alleges that the debtor's discharge is due to be denied under section 727(a)(5) for the debtor's failure to satisfactorily explain the dissipation of assets, namely the Dana–Mobile check for $9,162.00, during the month immediately preceding the filing date of the debtor's petition. At his section 341 meeting of the creditors, the debtor first stated that he did not know whether or not he had spent the entire check, and then stated that the proceeds were simply "gone". Thereafter, the debtor testified that he spent the money "here and there," and paid bills with the remainder of the proceeds. However, the debtor repeatedly refused to specify the items purchased or bills paid.

During the Holt deposition, the debtor stated under oath that he spent the Dana–Mobile check on clothes, tires, tools, a vacation, and in payment of miscellaneous bills. In response to questions regarding the Dana–Mobile check at trial, the debtor testified that he (1) purchased certain tools and equipment for approximately $3,500.00 in anticipation of his new job with Franklin; (2) purchased life insurance; (3) paid hospital bills for a grandchild; and (4) lived off of the remainder of the proceeds while unemployed. The Court notes that the debtor did not offer any documentary proof of these claims. Moreover, at the hearing in this matter, the debtor testified that he did not actually take a vacation until July of 1995, approximately two months after he filed his bankruptcy petition.

The debtor submitted an extensive two page list of tools that he allegedly purchased with a substantial portion of the Dana–Mobile proceeds. However, the Court notes that the debtor did not proffer any receipts, pictures, or other documentary proof of said purchases. Moreover, in response to Question # 27, Schedule B, under which the debtor was required to list his interest in "machinery, fixtures, equipment, and supplies used in business," he responded "none".

■ To prevail on an objection to discharge for false oath or account pursuant to section 727(a)(4)(A), the plaintiff must establish that:

1. debtor made a false statement under oath;

2. debtor made said statement knowingly and with fraudulent intent; and

3. that the statement was material to the bankruptcy case.

*First American Bank v. Bodenstein (In re Bodenstein),* 168 B.R. 23 (Bankr.E.D.N.Y. 1994); *Armento v. Armento (In re Armento),* 127 B.R. 486 (Bankr.S.D.Fla.1991); *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir. 1991).

■ Further, section 727(a)(5) mandates that "it is the Plaintiff's burden to establish that the Debtor had [an] interest in a property of some substance not too far removed from the date of the commencement of the case and on the date of the commencement of the case, he no longer had that property and when the Debtor was called upon to explain the non-existence of the property, he was unable to furnish a satisfactory explanation." *Insurance Co. of North America v. White (In re White),* 177 B.R. 110, 115 (Bankr.M.D.Fla. 1994).

■ To effectuate the fresh start policy, objections to discharge are strictly construed against an objecting creditor and liberally in favor of the debtor. *Kiester v. Handy (In re Handy),* 164 B.R. 355 (Bankr.M.D.Fla.1994); *Sperling v. Hoflund (In re Hoflund),* 163 B.R. 879 (Bankr.N.D.Fla.1993); *In re Armento,* 127 B.R. at 490. However, discharge is only available to honest debtors, and should only be applied liberally where there was no intent to violate the provisions of the law pertaining to discharge. *Island Bank v. Gill (In re Gill),* 159 B.R. 348 (Bankr. M.D.Fla.1993); *Weissing v. Levine (In re Levine),* 139 B.R. 551 (Bankr.M.D.Fla.1992);

*Barnett Bank v. Muscatell (In re Muscatell),* 113 B.R. 72 (Bankr.M.D.Fla.1990).

■ Accordingly, to justify the denial of discharge under either section, the plaintiff has the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Thereafter, the burden of proof shifts to the debtor. *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984); *Phillips v. Phillips (In re Phillips),* 187 B.R. 363, 370 (Bankr.M.D.Fla.1995) (providing that under section 727(a)(4)(A), the burden of persuasion shifts to the debtor once the objecting party has established by a preponderance of the evidence that "the debtor knowingly made a false oath that was both fraudulent and material); *Hawley v. Cement Indus., Inc. (In re Hawley),* 51 F.3d 246, 248 (11th Cir.1995) (holding that the objecting party has the initial burden of proof, but; thereafter, the burden shifts to the debtor to satisfactorily explain the loss of assets pursuant to section 727(a)(5)). The Court is of the opinion that Dana has sustained this burden under both sections, and that the debtor has failed to satisfy his burden of persuasion.

■ For purposes of section 727(a)(4)(A), "false oaths" include false statements or omissions in a debtor's schedules, false statements made by a debtor during the section 341 meeting of creditors, and false statements at the debtor's deposition. *Ohio Co. v. Maynard (In re Maynard),* 162 B.R. 349 (Bankr.M.D.Fla.1991) (holding that debtor's omission from schedules of a pre-petition transfer constituted a false oath); *Montey Corp. v. Maletta (In re Maletta),* 159 B.R. 108 (Bankr.D.Conn.1993) (providing that for purposes of section 727(a)(4)(A) false statements made by the debtor on his schedules and during his section 341 meeting constitute false oaths); *Lissack Enters., Inc. v. Braidis (In re Braidis),* 27 B.R. 470, 472 (Bankr. E.D.Pa.1983) (providing that false oaths may consist of false statements made by the debtor during his section 341 meeting and deposition); *Villas On The Green, Inc. v. Trauger (In re Trauger),* 101 B.R. 378 (Bankr. S.D.Fla.1989) (determining that false statements made by the debtor at his deposition and in his schedules constituted false oaths within the meaning of section 727(a)(4)(A)).

■ At the hearing in this matter, the debtor admitted depositing $4,500.00 of the Dana–Mobile check into his checking account, and that he previously failed to disclose said fact. He testified that he inadvertently denied said deposit at the 341 meeting because he was nervous. However, the record reflects that the debtor actually deposited $4,500.00 into each of his Listerhill accounts on April 20, 1995, approximately one month before the debtor filed his petition. The record further reflects that the debtor inaccurately listed the value of his cash, checking and savings account interest in his bankruptcy petition. The account records indicate that $4,504.63 was withdrawn from the debtor's savings account on May 19, 1995, and that on that date the debtor's checking account balance was $2,350.38, just three days before he filed his petition on May 22, 1995. Moreover, it is uncontroverted that debtor failed to list his alleged ownership of approximately $3,500.00 in equipment and tools in his schedules signed under oath and penalty of perjury. Thus, the record reflects that the debtor made numerous false statements under oath. Any one of said false statements standing alone may not justify the denial of debtor's discharge, but when said statements are analyzed together they are more than sufficient to deny the debtor's discharge. *Holland v. Sausser (In re Sausser),* 159 B.R. 352 (Bankr.M.D.Fla.1993).

The Court further notes that during the trial the debtor repeatedly offered vague, non-responsive answers to questions concerning the disposition of the $9,162.00 Dana–Mobile check. The Court is convinced that debtor knowingly acted in a fraudulent manner in an effort to deprive his creditors of any means by which to trace his assets. Thus, the first two elements of section 727(a)(4)(A) are satisfied.

■ When determining whether a false oath will bar a debtor's discharge, the test for materiality is whether the false statement was related to debtor's business transactions or estate, or concerned the discovery of assets, business dealings, or existence and disposition of debtor's property. *Chalik v.*

*Moorefield,* 748 F.2d 616 (11th Cir.1984); *Messing v. Urban (In re Urban),* 130 B.R. 340 (Bankr.M.D.Fla.1991); *Tavormina v. Van Den Heuvel (In re Van Den Heuvel),* 125 B.R. 846 (Bankr.S.D.Fla.1991). The false oath need not result in detriment to creditors to be material because creditors are entitled to judge for themselves what will benefit them. *In re Levine,* 107 B.R. at 785; *In re Kaiser,* 94 B.R. 779 (Bankr.S.D.Fla. 1988); *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984). Instead, debtors must make full disclosure of all of their assets and liabilities. *Island Bank v. Gill (In re Gill),* 159 B.R. 348 (Bankr.M.D.Fla.1993). In the instant case, each of the above false oaths undeniably hindered the ability of the debtor's creditors to uncover the extent of the debtor's assets. Therefore, the final element of section 722(a)(4)(A) is satisfied. Accordingly, the debtor's discharge is due to be denied under section 727(a)(4)(A).

▇▇▇ The Court further finds that the debtor's discharge is also due to be denied pursuant to section 727(a)(5). As aforementioned, section 727(a)(5) mandates that the plaintiff prove by a preponderance of the evidence that the debtor had certain, identifiable assets prior to the filing date of his petition, and that the debtor no longer has said assets. *In re White,* 177 B.R. at 113; *Manhattan Leasing Sys., Inc. v. Goblick (In re Goblick),* 93 B.R. 771, 774 (Bankr.M.D.Fla. 1988). Thereafter, the burden shifts to the debtor to satisfactorily explain the loss of said assets. *In re Goblick,* 93 B.R. at 774. "The explanation furnished by the Debtor must be satisfactory and must be strong enough to convince the trier of fact." *Id.*

▇▇▇ In the instant case, the evidence is uncontroverted that approximately one month before the date of filing his petition, the debtor received a check for $9,162.00 from Dana–Mobile when the debtor ceased working for the company, and that the debtor no longer has said asset. Accordingly, Dana has satisfied its burden of proof under section 727(a)(5).

▇▇▇ Based upon the foregoing record, the Court believes that the debtor has not offered a satisfactory explanation to this Court regarding the loss of assets. "Vague and indefinite explanations of losses such as 'monies were spent' " are unacceptable without documentation. *Id.; Hawley v. Cement Indus., Inc. (In re Hawley),* 51 F.3d 246 (11th Cir.1995). Likewise, an undocumented claim that the money was used to satisfy the debtor's living expenses is unacceptable. *MacPherson v. Shaheen (In re MacPherson),* 129 B.R. 259, 261 (M.D.Fla.1991) (holding that the debtor's undocumented loss of $88,-000.00 during an eighteen month period, wherein the debtor explained that approximately $55,000.00 was used for living expenses, was unacceptable to avoid denial of discharge under section 727(a)(5)). Accordingly, the Court finds that the debtor's failure to explain the dissipation of approximately $9,000.00 prior to the filing of his petition warrants the denial of debtor's discharge pursuant to section 727(a)(5).

It is obvious to the Court that the sole purpose of the debtor's bankruptcy is to discharge the debt to Dana. The credit union is the debtor's only "real" creditor. The debtor is apparently gainfully employed and has sufficient assets with which to pay his debts. Instead of using his severance pay check received from his former employer, to pay off his debt to Dana, the debtor chose to dispose of the $9,162.00 check and/or not account for same, and to file for Chapter 7 bankruptcy relief within only one month of receiving the funds.

Thus, in summary the Court finds as follows:

(1) With respect to his bank accounts, the debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account whereby debtor made numerous omissions from his schedules. In Schedule B, debtor stated under oath that as of May 22, 1995, he had $7.00 in cash, $400.00 in checking, and $25.00 in savings when on May 19, 1995, debtor in fact had $2,350.38 in his checking account, and $4,529.63 in his savings account before making a $4,504.63 withdrawal therefrom immediately prior to the filing date of debtor's petition.

(2) The debtor knowingly and fraudulently made a false oath in or in connection with this case, when at the debtor's section 341

creditors meeting, debtor testified under oath that he received a check from Dana–Mobile when he ceased working for the company, but denied depositing the money into his checking account upon examination by Dana. The debtor later recanted said testimony during a deposition on August 10, 1995, at which time he stated that he deposited $4,500.00 of the $9,162.00 check into his checking account and spent the balance upon various personal items. However, the evidence is uncontroverted that debtor actually deposited $4,500.00 in to both his checking and savings account on April 20, 1995.

(3) The debtor's discharge is due to be denied under section 727(a)(5) because debtor has failed to satisfactorily explain the loss of assets. When questioned regarding the disposition of the $9,162.00 check received by debtor on April 20, 1995, debtor stated that he did not know where the money went other than that he paid bills and made miscellaneous purchases. At the hearing and during his deposition, debtor alleged that the money was spent on a vacation, clothes, tires, tools, life insurance, and the payment of various bills. However, other than debtors vague allegation that the entire $9,162.00 was spent on miscellaneous items, the debtor did not offer any proof to substantiate his claim and; further, failed to claim any tools as exempt property in Schedule B.

(4) The debtor knowingly and fraudulently committed a false oath in or in connection with this case where debtor testified at his first creditors meeting that he had not paid any extraordinary expenses nor distributed any gifts within the year proceeding the filing date of debtor's petition. The evidence is uncontroverted that between April 20, 1995 and May 22, 1995, the debtor spent approximately $2,000.00 more than his normal income.

(5) The debtor filed his bankruptcy petition in an attempt to discharge the debt to his only "real" creditor just one month after receiving a $9,162.00 from his former employer which would have satisfied his debt to Dana. In an attempt to hinder his creditors from discovering said assets, the debtor disposed of and/or failed to account for said proceeds. Under the totality of the circum-

stance, it is the Court's opinion that the debtor acted in bad faith, and in violation of the spirit of the fresh start theory, the cornerstone of bankruptcy law, by engaging in such conduct. The debtor's actions will not be furthered by this Court.