In re Frank E. CLARK, Jr., Debtor.

Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, in his official capacity as Receiver of George Washington Life Insurance Company, Plaintiff,

v.

Frank E. CLARK, Jr., Defendant.

Bankruptcy No. 96–4092–BKC–3P7.
Adversary No. 96–545.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 16, 1997.

Raymond Magley, Smith, Hulsey & Busey, Jacksonville, FL, for Plaintiff.

Janet Thurston, Jacksonville, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court on a complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(4) and objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(5). After a trial on May 14, 1997, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Defendant served as an officer and a director of George Washington Life Insurance Company (GWL) from 1979 through 1990. (Tr. at 8). In 1991, the Circuit Court of Kanawha County, West Virginia appointed Plaintiff as Receiver of GWL. (Pl.'s Ex. 3).

2. In 1992, Plaintiff sued Defendant and other GWL officers and directors in the United States District Court for the Southern District of West Virginia. Following a jury trial, the Court entered judgment against the Defendant and awarded damages totalling $2,107,521.34. (Tr. at 8–10, Pl.'s Ex. 3–9).

3. During 1993, Defendant and his wife held deferred annuity accounts with an aggregate value of approximately $145,000. Some of the investment accounts were in Defendant's name, and some accounts were in Defendant's wife's name. (Tr. at 17–18). Defendant testified, however, that he had control over his wife's accounts and ultimately had access and control over all of the funds withdrawn. (Tr. at 37).

4. In 1993 and 1994, Defendant withdrew $8,000 from his account. In 1994, he withdrew the remainder of the funds, from the other investment accounts, totalling approximately $145,000. (Tr. at 19). Also in 1994, Defendant received income of approximately $27,000. (Tr. at 10–11).

5. Of the more than $170,000 Defendant received in 1994, he claims that he deposited over half of it into an account held by himself and his wife. (Tr. at 21). However, Plaintiff produced bank statements for that account which show that only a little over $40,000 was deposited into that account during 1994. (Tr. at 24–30, Pl.'s Ex. 11).

6. Defendant testified that he used the money he received to supplement living expenses, to travel, to play golf, and to attend theater shows. Defendant testified that he customarily paid for such items in cash, and that he only retained receipts for warranty items or for expenses that might have tax consequences. (Tr. at 12–16, 71, 75). At trial, Defendant only produced receipts for three such items: one for a car repair, one for kitchen remodeling costs, and one for new carpeting. These three items totalled approximately $6,000. (Deft.'s Ex. 1–2).

7. Defendant also testified that he lost approximately $80,000 in gambling. (Tr. at 32). Although Defendant produced miscellaneous casino identification cards, theater thicket stubs, and hotel reservation slips, Defendant produced no receipts to corroborate that he lost $80,000 gambling. (Tr. at 51–52; Def.'s Ex. 5).

8. Defendant further testified that he spent the money because he was aware of the judgment from the West Virginia court and he did not want Plaintiff to get the money. (Tr. at 21, 37–38, 80).

9. Defendant filed for relief under Chapter 7 of the Bankruptcy Code on July 9, 1996. On October 24, 1996, Plaintiff filed this adversary proceeding objecting to Defendant's discharge pursuant to 11 U.S.C. § 727(a)(5) and (a)(3), alleging that Defendant failed to satisfactorily explain the loss of cash assets and that Defendant failed to maintain records from which his financial condition could be ascertained.

10. Alternatively, Plaintiff seeks to have its debt excepted from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(4), alleging that the Defendant breached a fiduciary duty to GWL, and that because this issue was adjudicated by the West Virginia court, this

Court is bound by the doctrine of collateral estoppel.

## CONCLUSIONS OF LAW

### A. 11 U.S.C. § 727(a)(5)—Loss of Assets

■ Bankruptcy Code section 727(a)(5) provides:

(a) The Court shall grant the debtor a discharge, unless —

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(5). Under this section, Plaintiff bears the burden of proving, by a preponderance of the evidence, that Defendant's discharge should be denied. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984). If Plaintiff produces sufficient evidence to overcome this burden, the Defendant must then prove his entitlement to a discharge.

■ Under 11 U.S.C. § 727(a)(5), the Defendant is required to provide a satisfactory explanation for his loss of assets. *Hawley v. Cement Industries, Inc. (In re Hawley)*, 51 F.3d 246, 249 (11th Cir.1995). According to the Eleventh Circuit Court of Appeals, " '[v]ague and indefinite explanations of loses that are based on estimates uncorroborated by documentation are unsatisfactory.' " *Id.* (quoting *In re Chalik*, 748 F.2d 616, 619 (11th Cir.1984)).

■ This Court has stated that a debtor's explanation of loss of assets "requires more than undocumented, unsupported vague generalities ... An explanation must convince the court of the debtor's good faith and businesslike conduct." *Grant v. Simmons (In re Simmons)*, 113 B.R. 741, 745 (Bankr. M.D.Fla.1990). Additionally, the debtor's explanation should not arouse suspicion as to how the assets were lost. *Id.* Vague assertions that money was spent on living expenses or lost through gambling, without corroborating documentation, are unacceptable. *Manhattan Leasing Systems, Inc. v. Goblick*

*(In re Goblick)*, 93 B.R. 771, 775 (Bankr. M.D.Fla.1988).

■ In this case, Plaintiff argues that Defendant's discharge should be denied because he has failed to explain the loss of over $170,000. Defendant withdrew from various accounts or received as income in 1994. The Court finds that Plaintiff has met his burden of proving that Defendant obtained those funds and utilized them prior to filing his petition. Defendant now bears the burden of explaining the loss of those assets.

Defendant testified that he deposited over half of the money into a joint account held by himself and his wife. Evidence produced by the Plaintiff, however, shows that Defendant deposited only a little over $40,000 into that account in 1994. (Pl.'s Ex. 11).

Thus, Defendant must still account for over $130,000 of the money he received. In general, Defendant testified that he spent the money on living expenses, travel, golf, and gambling. To corroborate this testimony, however, Defendant produced only three receipts for auto and home expenses. (Deft.'s Ex. 1–2). To substantiate his claim that he lost over $80,000 gambling, Defendant produced several hotel reservation slips, casino identification cards, and theater ticket stubs. However, Defendant failed to produce sufficient evidence to prove that he lost $80,000 on those gambling trips.

The Court finds the documentary evidence presented by the Defendant is insufficient to corroborate his testimony as to how the money was utilized. Defendant's assertions that he used the money for living expenses, travel, golf, and gambling are vague and indefinite. The Court finds that Plaintiff has met his burden of proving that Defendant's discharge should be denied for his failure to explain the loss of cash assets.

### B. 11 U.S.C. § 727(a)(3)— Inadequate Records

Plaintiff also argues that Defendant's discharge should be denied because he failed to maintain records from which his financial condition could be ascertained. Bankruptcy Code section 11 U.S.C. § 727(a)(3) provides:

(a) The court shall grant the debtor a discharge, unless —

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case [.]

11 U.S.C. § 727(a)(3).

▮ Plaintiff bears the burden of proving that Defendant's financial records are inadequate. *Phillips v. Nipper (In re Nipper)*, 186 B.R. 284, 289 (Bankr.M.D.Fla.1995). Although the Court does not require a full accounting, Defendant should produce some records from which his financial condition could be ascertained. *Id.* Courts in this District have held that "[w]hile it is true that the duty to keep books and records is not absolute and depends on the circumstances, it is equally true that one with business dealings as extensive as [Defendant's] should have extensive records from which his financial condition could be ascertained." *Messing v. Urban (In re Urban)*, 130 B.R. 340, 345 (Bankr.M.D.Fla.1991). *See also Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir.1992) (holding that "[s]ophisticated business persons are generally held to a high level of accountability in record keeping.").

▮ Defendant was the Chief Financial Officer of a large corporation for ten years, and has substantial accounting experience. (Tr. at 8). Defendant is financially sophisticated.

Defendant testified that when he learned of the judgment entered against him in the West Virginia court, he spent large sums of money to prevent Plaintiff from recovering any of it. (Tr. at 21, 80). Although Defendant testified that he routinely paid cash for ordinary expenses and discarded receipts and bank statements, the Court finds it unreasonable that a judgment debtor would dispose of such large amounts of money without maintaining records of how the money was utilized.

The Court finds that Plaintiff has met his burden of proving that Defendant's discharge should be denied for his failure to maintain records from which his financial condition could be ascertained.

### C. 11 U.S.C. § 523(a)(4)— Dischargeability of Debt

Plaintiff alternatively argued that if Defendant was entitled to a discharge, the debt owed by Defendant to Plaintiff should be excepted from that discharge pursuant to 11 U.S.C. § 523(a)(4). In making this argument, Plaintiff asserts that because the West Virginia court found that Defendant breached a fiduciary duty to GWL, this Court is bound, by the doctrine of collateral estoppel, to find that Plaintiff's debt is nondischargeable.

However, the Court will deny Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(5) and (a)(3). Thus, it will not address the dischargeability of the debt under 11 U.S.C. § 523(a)(4).[1]

### CONCLUSION

Defendant has failed to satisfactorily explain the loss of over $130,000 in cash assets he received as income or from withdrawals in 1994. Defendant has also failed to maintain financial records from which Plaintiff could determine how Defendant utilized those funds. The Court finds that the Defendant's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(5) and (a)(3). The Court will enter a judgment in accordance with these findings of fact and conclusions of law.

---

1. Although not addressing it in this opinion, the Court has previously dealt with Plaintiff's collateral estoppel argument in companion cases related to the present adversary. In those cases, the Court has rejected Plaintiff's argument that the issues adjudicated by the West Virginia court are identical to those presented under 11 U.S.C. § 523(a)(4). *See Clark v. Allen (In re Allen)*, 206 B.R. 602 (Bankr.M.D.Fla.1997).