In re Gordon E. **MAYNARD**, Debtor.

The **OHIO COMPANY**, Plaintiff,

v.

Gordon E. **MAYNARD**, Defendant.

**Bankruptcy No. 92–2115–8P7.**
**Adv. No. 92–403.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 30, 1993.

Richard C. Prosser, Tampa, FL, J. Kevin Cogan, Columbus, OH, for plaintiff.

Guillermo A. Ruiz, St. Petersburg, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a highly fact intensive controversy and without doubt one might, even after a cursory reading of the facts, raise eyebrows and suspect that what occurred in this instance is just not right. However, a careful analysis of the facts as established by the record leaves serious doubt whether or not

any of the grounds plead in the Complaint filed by the Ohio Company (Plaintiff) warrant the denial of the discharge of Gordon E. Maynard (Debtor).

The Plaintiff's challenge to the Debtor's right to a discharge is presented in a five-count Complaint. In Count I, the Plaintiff alleges that the Debtor transferred the following property to his wife:

(1) Public Service of New Hampshire bonds;

(2) limited partnership interests in Amrecorp II Ltd. Partnership, Amrecorp III Ltd. Partnership and Chatfield Ltd. Partnership;

(3) a 38–foot, 1974 Hatteras yacht;

(4) a 1990 Acura automobile;

(5) a tax refund in the amount of $11,-634.83.

In addition, the Plaintiff alleges in Count I that the Debtor concealed certain loan receivables due to him totalling approximately $100,000.00, resulting from loans made by the Debtor to certain of his customers in order to enable them to meet "margin" calls on brokerage accounts maintained by the clients with the brokerage house. The Plaintiff alleges that these actions were done with the intent to hinder, delay or defraud creditors, and that they were accomplished by the Debtor within one year of the filing of the Petition. According to the Plaintiff, these acts by the Debtor are sufficient to deny his general discharge pursuant to § 727(a)(2) of the Bankruptcy Code.

In Count II, the Plaintiff alleges that the Debtor destroyed or failed to keep or preserve books, records or documents relating to the following transactions or property:

(1) the Debtor's purchase, ownership, sale or transfers of the Public Service of New Hampshire Bonds, or the proceeds of any sale of these bonds;

(2) the loan receivables related to the funds loaned to the Debtor's clients to cover their "margin" calls;

(3) the transfers of property by the Debtor to his wife, listed above;

(4) the Debtor's and Debtor's wife's respective assets.

Therefore, the Plaintiff alleges that the Debtor's discharge should be denied pursuant to § 727(a)(3) of the Bankruptcy Code.

Count III is based upon § 727(a)(4) of the Bankruptcy Code. In this Count, the Plaintiff alleges that the Debtor made a false oath by failing to disclose in his Schedule of Assets and Liabilities his ownership interests in the Public Service of New Hampshire (PSNH) bonds and the transfer of the tax refund check to his wife. In addition, the Plaintiff also allege that the Debtor falsely testified at the § 341 Meeting of Creditors with regard to the following: that the PSNH bonds were owned by his wife; that the yacht, the tax refund, and the Honda Civic were transferred for adequate consideration, in satisfaction of a debt or as a gift; and that the transfers made to his wife were not to hinder, delay or defraud creditors.

Finally, in Count IV the Plaintiff's claim is related to the property discussed earlier and charges that the Debtor failed to satisfactorily explain the loss of these assets and the deficiency of his assets to meet his liabilities. Therefore, according to the Plaintiff, he is not entitled to a discharge pursuant to § 727(a)(5) of the Bankruptcy Code.

These are the claims which form the basis to deny the Debtor's discharge. In addition, the Plaintiff in its Complaint also sought, in the alternative, a determination by this Court that the debt owed by the Debtor to the Plaintiff is nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code. At the pre-trial conference, the Court bifurcated the claims set forth in the Complaint in order to resolve the threshold issues relating to the Debtor's right to a general discharge. Subsequently, this Court entered an Order and dismissed the claim set forth in Count V, a claim of non-dischargeability based on § 523(a)(4) of the Bankruptcy Code.

The facts as established at the final evidentiary hearing, and which are relevant to resolution of the relevant issues under consideration are as follows:

At the time relevant, the Debtor was a stockbroker employed as a registered representative of the Plaintiff in its offices located in Port Huron, Michigan, and Clearwater, Florida. During 1987 and 1988, prior to the

filing his Petition for Relief under Chapter 7 of the Bankruptcy Code, the Debtor was involved in litigation initiated by several of his clients (Clients). The Clients, in their suit, alleged that the Debtor, together with the Plaintiff and others, violated numerous federal and state securities laws, the rules and regulations promulgated by the National Association of Securities Dealers (NASD), and provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. The Clients also asserted claims based on common law fraud, breach of fiduciary duty and negligence. The Plaintiff settled the Customer Litigation with the Clients, in July, 1990. In conjunction with the settlement, the Debtor and the Clients executed Mutual Release and Settlement Agreements (Settlement). In the Settlement, the Plaintiff reserved its right to seek indemnification and contribution from the Debtor based upon the Settlement. The claims pursued currently before this Court by the Plaintiff are based upon the Plaintiff's right to indemnification and contribution pursuant to the Settlement.

The record established at the trial reveals that the Debtor and his wife, Constance (Mrs. Maynard), were married in 1982. Mrs. Maynard is a housewife, who was last employed in 1990. The Debtor's income for the years 1985 through 1991 was as follows:

| 1985 | $181,056.00 |
|------|-------------|
| 1986 | 263,903.00 |
| 1987 | 222,093.00 |
| 1988 | 92,778.00 |
| 1989 | 173,327.00 |
| 1990 | 108.719.00 |
| 1991 | 129,763.00 |

In contrast, Mrs. Maynard's income for those same years was as follows:

| 1985 | $11,419.00 |
|------|------------|
| 1986 | 2,952.00 |
| 1987 | 2,000.00 |
| 1988 | 0.00 |
| 1989 | 6,380.00 |
| 1990 | 3,950.00 |
| 1991 | 0.00 |

(Plaintiff's Exhibits # 9–15). Both the Debtor and Mrs. Maynard, individually, maintained securities accounts through Advest Investment Corp. (Advest), the Debtor's current employer.

During the relevant time, the Debtor owned or held interests in a variety of investments. These investments included interests in Amrecorp II and Amrecorp III, two limited partnership investments offered by the Plaintiff to its clients; Aspen Grove, Inc., a closely-held corporation in which the Debtor was a stockholder; WEK, Inc., a sub-S corporation formed by the Debtor and his associate William E. Krieger, and; A/C Chatfield, Ltd., an Adult–Congregate Care Facility (ACCF). In addition, the Debtor and Mrs. Maynard, either individually or jointly, owned a 1974 Hatteras Inboard 38 foot boat, a 1987 Mercedes–Benz automobile, a 1987 Mercury automobile, a 1990 Honda Civic automobile and a 1990 Acura Legend automobile. Finally, the Debtor also loaned to WEK, Inc., and Aspen Grove of Marysville, Ltd., as well as to some of his clients, substantial sums of money, all of which were still due and owing to the Debtor at the time of the commencement of this Chapter 7 case.

In the two years preceding the commencement of the case, the Debtor experienced a severe decline in his financial condition. Between July, 1991 and December, 1991, the Debtor transferred the following items to his wife: (1) title to the 1990 Honda Civic; (2) interest in Amrecorp Realty Fund II and Amrecorp Realty Fund III; (3) interest in A/C Chatfield Ltd.; (4) a tax refund in the amount of $11,634.83; and (5) title to the 1990 Acura. The decline of the Debtor's financial condition was due, in part, to his failure to file his tax returns during the years 1985 through 1990. In 1991, the Debtor and Mrs. Maynard, were assessed by the Internal Revenue Service (IRS), taxes due and owing in the amount of $93,865.77. According to the Debtor, in order to pay the delinquent taxes, the Debtor borrowed money from his wife's securities account. Before Mrs. Maynard would permit the use of money from her individual securities account to pay the back taxes, she required the Debtor to transfer certain assets to her. The Debtor conceded to her request and did transfer his interest in Aspen Grove, Inc., WEK, Inc. and all receivables due to him by WEK, Inc. and Aspen Grove Apartments of Marysville, Ltd. These transfers were memorialized by the execution of a Memorandum Agreement be-

tween the Debtor and Mrs. Maynard dated September 30, 1991. (Plaintiff's Exhibit # 7).

On February 18, 1992, the Debtor filed his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. In connection with the filing of the Petition, the Debtor also filed his Schedule of Assets and Liabilities, together with his Statement of Financial Affairs, which he had signed under the penalty of perjury.

In his Statement of Financial Affairs, the Debtor listed receipt of an $11,634.83 tax refund, a gift of a 1990 Honda Civic to Mrs. Maynard, and the transfer of the 1990 Acura, along with his interests in Amrecorp II, & III, Ltd., Aspen Grove, Inc., WEK, Inc., and Chatfield, Ltd. to Mrs. Maynard. According to the Plaintiff, the Debtor should have also included the transfer of the PSNH bonds, the Hatteras Yacht, the tax refund and the loan receivables due to him from his clients as having been transferred to Mrs. Maynard within one year of the filing of his Petition for Relief. It is without dispute that none of these transfers were disclosed on the Debtor's Statement of Financial Affairs.

Based upon the foregoing, the Plaintiff contends that the Debtor is not entitled to receive his discharge. The Plaintiff asserts that the failure to disclose assets and the transfer of those assets, the failure to satisfactorily explain the loss of assets, and the making of a false oath are sufficient to deny the Debtor his discharge pursuant to § 727(a)(2), (a)(3), (a)(4), and (a)(5) of the Bankruptcy Code. These subsections of § 727 read in pertinent part as follows:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

.    .    .    .    .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

.    .    .    .    .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

The party objecting to the Debtor's discharge has the burden of proving by a mere preponderance of the evidence that the Debtor's discharge should be denied. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Once a party objecting to the discharge has met the initial burden of proving the objection by producing evidence establishing the basis for the objection, the ultimate burden of persuasion is placed on the Debtor. *In re Goblick,* 93 B.R. 771 (Bankr.M.D.Fla.1988); *In re Chalik,* 748 F.2d 616 (11th Cir.1984).

To prevail on a count based upon § 727(a)(2), the Plaintiff has the burden to establish by preponderance of the evidence

that the Debtor concealed or transferred property with the intent to hinder, delay or defraud a creditor within the year preceding the date the Debtor filed his Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. This intent must be actual intent. However, the finding of actual intent may be based on circumstantial evidence or on reasonable inferences which may be drawn from the course of conduct. *In re Devers*, 759 F.2d 751 (9th Cir.1985)

■ Upon a review of the record, it is clear that, with the exception of the PSNH bonds, all transfers were fully disclosed by the Debtor on his financial affairs. This record totally lacks any evidence even remotely suggesting what happened to the PSNH bonds, and it is impossible to determine when they were purchased, by whom, and when, and whether they were, in fact, transferred to Mrs. Maynard by the Debtor.

In addition, it is also alleged in this Count by the Plaintiff that the Debtor assigned certain loan receivables, loans allegedly made by the Debtor to his clients in order to assist them to meet "margin" calls. According to the Debtor, these receivables were also assigned to Mrs. Maynard in consideration of the payment of the taxes. There is no reference to this assignment in the Memorandum Agreement. (Plaintiff's Exhibit # 7). There is no evidence concerning these loan receivables in the record except that they were written-off as bad debts by the Debtor and deducted by him on his 1988 Federal income tax return, notwithstanding the fact that he claimed to have assigned these receivables to Mrs. Maynard. (Plaintiff's Exhibit # 15). Based on the foregoing, this Court is satisfied that the Plaintiff has failed to sustain its burden of proof to establish the validity of the claim amended in Count I of the Complaint.

■ The basis to bar the discharge as asserted in Count II deals with the Debtor's alleged destruction or failure to keep or preserve books relating to certain transactions listed above. Of course, the requirement to keep books and records is not absolute and the adequacy vel non of books and records must be commensurate with the Debtor's business activities and transactions.

■ It is clear that the loan receivables due from the Debtor's clients were not documented in any way. The only evidence of the existence of these loans, as noted earlier, is a statement on the Debtor's income tax return when he deducted these as bad debt losses. Inasmuch as this Debtor was a sophisticated businessman who dealt with finances and investments in large amounts on a daily basis, it is evident that the loan receivables in a total amount of $100,000.00 require some documentation to show who and how much the clients of the Debtor owed. In light of the totality of the facts and circumstances as established by this record, this Court is satisfied that the Plaintiff did, in fact, establish with the requisite degree of proof a basis to deny the Debtor's discharge pursuant to § 727(a)(3) for the Debtor's failure to keep adequate books and records from which his financial condition could be ascertained.

In light of the foregoing, ordinarily it would be unnecessary to consider the additional grounds urged by the Plaintiff which, according to the Plaintiff, would warrant the discharge. However, in order to fully consider the Plaintiff's claim, this Court is satisfied that it is appropriate to consider the claims set forth in Counts III and IV.

Taking the two in seriatim, in Count III the Plaintiff claims that the Debtor failed to disclose, on his Schedule of Assets and Liabilities, his ownership interest in the PSNH bonds and, on the Statement of Financial Affairs, the tax refund check. In addition, the Plaintiff claims that the Debtor falsely testified at the Meeting of Creditors that the PSNH bonds were owned by his wife, and that the yacht, Honda Civic, and the tax refund were transferred to his wife for adequate consideration in satisfaction of a debt or by way of a gift.

■ With regard to the PSNH bonds, again, this record is devoid of any evidence of when the bonds were purchased, by whom, and if, and when, they were transferred. With regard to the transfers of property, it is clear that the yacht was titled in Mrs. Maynard's name individually in 1987, well before

the commencement of this case, and that the Debtor disclosed the transfer of the Honda Civic to Mrs. Maynard as a gift on his Statement of Financial Affairs. This Court is satisfied that, as to this property, the Plaintiff has not sustained its burden of proof.

However, this Court is unwilling to accept the explanation of the Debtor for the transfer of the tax refund to Mrs. Maynard. Although the Debtor disclosed receipt of the tax refund on his Statement of Financial Affairs, it is clear from the evidence that the refund was deposited in Mrs. Maynard's individual bank account. The Debtor contends that the refund was transferred to Mrs. Maynard because she had paid the tax liability. First, it is clear that both the Debtor and Mrs. Maynard were liable for the tax assessment because they filed joint tax returns. In addition, both the Debtor and Mrs. Maynard had an interest in the refund. Therefore, it is clear that the transfer of the refund to Mrs. Maynard was not for adequate consideration, but rather, for no consideration. Based upon the foregoing, this Court is satisfied that the Plaintiff has sustained its burden of proof with regard to Count III.

This leaves for consideration the claim set forth in Count IV of the Complaint. In this Count, the Plaintiff alleges that the Debtor has not satisfactorily explained the loss of assets, i.e., the accounts receivable owed to the Debtor in excess of $100,000.00. As noted earlier, the Debtor has no documentation at all with regard to these loans. The only explanation furnished by the Debtor was limited to his statement that he wrote the loans off as bad, or uncollectible. Without documents showing the amount of the loan, to whom the loans were made, and any attempts to collect these loans, this Court is satisfied that the Debtor has failed to satisfactorily explain the loss of these assets, and, therefore, the Debtor should be denied his discharge pursuant to § 727(a)(5) of the Bankruptcy Code.

A separate final judgment shall be entered in accordance with the foregoing.