In the Matter of Gerald JOHNSON, Debtor.

**BEHRMAN CHIROPRACTIC CLINICS INC., Plaintiff,**

**v.**

**Gerald JOHNSON, Defendant.**

**Bankruptcy No. 95–80892.**
**Adv. No. 95–80145.**

United States Bankruptcy Court, N.D. Alabama, Northern Division.

Dec. 19, 1995.

**988**

Curtis Whitmore, Huntsville, AL, for plaintiff.

James T. Baxter III, Huntsville, AL, for defendant/debtor.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on a complaint filed by the plaintiff, Behrman Chiropractic Clinics, Inc. (hereinafter "Behrman"), seeking a determination by this Court that the discharge of the debtor/defendant, Gerald Johnson (hereinafter "debtor"), is due to be denied pursuant to 11 U.S.C. § 727(a)(2)(A), (4)(A). The trial in this matter was held on the 27th day of November, 1995. Appearing were the debtor, Gerald Johnson, debtor's attorney, James T. Baxter, and attorney for the plaintiff, Curtis Whitmore. The Court has considered the complaint, the response of debtor, the documents submitted in support thereof, the pleadings, the arguments of counsel, and finds and concludes as follows.[1]

## I. FINDINGS OF FACT

This is a complaint seeking the denial of discharge for debtor under 11 U.S.C. § 727(a)(2)(A), (4)(A). In May of 1994, Behrman sued debtor in the Circuit Court of Madison County, Alabama, CIV. NO. CV94–798DBB. On February 28, 1995, an order was entered in the state court case which provided that debtor was to pay Behrman $128,002.41 for debtor's failure to satisfy the agreement between the parties wherein debtor obligated himself to purchase from Behrman a chiropractic clinic located in Madison County, Alabama.

On April 5, 1995, debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The debtor is a chiropractic physician doing business as Johnson Chiropractic Center located in Madison County, Alabama.

In its pleadings, Behrman alleges that (1) debtor should be denied a discharge under section 727(a)(2)(A) of the Bankruptcy Code on the grounds that the debtor transferred or concealed certain property within one year of the filing date of the debtor's petition with the intent to hinder, delay or defraud his creditors;[2] and (2) debtor's discharge is due

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. In its list of issues for trial, Behrman indicated that the debtor transferred or concealed the following list of property:
   1. X-ray equipment;
   2. IBM–XT computer/printer system;
   3. Muscle stimulator;
   4. Hydroculator;
   5. Posture analyzer;

to be denied under section 727(a)(4)(A) for the knowing and fraudulent making of a false oath or account where debtor made several omissions from his Bankruptcy Schedules and Statement of Financial Affairs and/or an inventory and appraisal made by the debtor for use in this case.

In June of 1989, Behrman hired the debtor to practice in its clinic located in Madison County, Alabama. On or about June 1, 1990, the parties entered into an agreement for the sale of the clinic by Behrman to debtor for $200,000.00 to be paid in $3,500.00 monthly installments for a period of five years. In early 1993, debtor terminated his relationship with Behrman by surrendering possession of the clinic and suspending payments for said premises. Thereafter, in April of the same year, debtor began doing business as Johnson Chiropractic Center.

After the debtor terminated his relationship with Behrman, he leased an office from Dr. Michael Shales. Upon opening his own clinic, the debtor testified that he purchased several items of office furniture and equipment.

In its pleadings, Behrman first alleges that debtor's discharge is due to be denied under subsections 727(a)(2)(A), (4)(A) of the Code because the debtor concealed and committed a false oath by failing to include certain items of office furniture and equipment in his schedules. In Schedule B, debtor, in response to Question 26, which called for the disclosure of office equipment, furnishings, and supplies, listed the value of his interest in said items as $708.00. Debtor employed Mike Hodges (hereinafter "Hodges"), of M & B Used Furniture and Appliances, to appraise his office equipment and furnishings with said appraisal to be utilized in connection with the case. The debtor testified that he provided the appraisal to his attorney with the understanding that his attorney would use the appraisal in determining the value of debtor's office furniture and equipment.

Although the items hereinafter listed were in debtor's office at the time Hodges examined debtor's office, Hodges testified that, at the debtor's request, the following items were not included in the appraisal: IBM–XT computer, hydroculator, transcriber, muscle stimulator, posture analyzer, office desk, and telephones.[3] According to Hodges, the debtor specifically pointed out the above items and stated that they were not to be included in the appraisal. However, each of the above items was provided to the debtor's accountant, George Cooper (hereinafter "Cooper"), C.P.A., by someone in the debtor's office to be used in calculating debtor's 1993 federal income taxes. In 1993, the debtor elected to claim the above items as an I.R.C. § 179 expense deduction.

The Court further notes that, in September of 1994, the debtor provided Behrman with a statement of assets and liabilities in which the debtor listed the value of his office furnishings and equipment as approximately $8,000.00. However, when debtor filed his petition in April of 1995, he listed the value of the same assets as $708.00. The debtor has not offered any credible explanation for the diminution in value that occurred over the seven month period.

In addition to leasing the office from Dr. Shales, debtor purchased certain X-ray equipment from Dr. Shales by bill of sale dated April 5, 1993, for $5,000.00. In its pleadings, Behrman alleges that debtor fraudulently transferred the X-ray equipment with the intent to hinder, delay or defraud his creditors within the meaning of 11 U.S.C. § 727(a)(2)(A). Behrman further contends that debtor's failure to account for said transfer in his schedules constituted a knowing and fraudulent false oath in connection with the case within the meaning of 11 U.S.C. § 727(a)(4)(A).

6. Dictaphone transcriber;
7. Computer desk;
8. Telephones;
9. Adjusting tables.

3. Hodges included the following items in the appraisal of debtor's business; 3 leather/2 cloth chairs, 1 cherry end table, 1 wall mirror, 1 Cannon PC6RE copier, 1 Smith Corona XE 1950 typewriter, file cabinet, view boxes, 4 skeleton tables, 1 stool, 4 chairs, mini refrigerator, and computer table.

On April 1, 1994, debtor sold the X-ray equipment to a corporation owned by Dr. Ronald Kimmel, Classic Chiropractic Wellness Centers, for a total purchase price of $8,000.00. According to debtor's testimony, Dr. Kimmel paid a deposit of $100.00 on the date of purchase, but failed to take possession of the X-ray equipment until November of 1994. Debtor testified that he continued to use the X-ray equipment during the interim.

On November 5, 1994, Dr. Kimmel issued to debtor check number 2007 from Class Clothing Inc., a separate corporation owned by Dr. Kimmel, for $4,000.00 upon taking possession of the X-ray equipment. Debtor deposited check number 2007 into his personal checking account (not his business account). On December 5, 1994, check number 2008, in the amount of $4,000.00, from Class Clothing Inc. was delivered to the debtor by Dr. Kimmel. Upon depositing the check into his personal checking account, the debtor discovered that Dr. Kimmel had placed a stop payment order on the check. On March 15, 1995, Dr. Kimmel paid an additional $2,200.00 on the balance of the bill of sale by issuing check number 2214.[4] Again, debtor deposited check number 2214 into his personal rather than business checking account. Check number 2214 cleared the debtor's account leaving a balance of $1,900.00 owing to debtor for the equipment. After the petition date, Dr. Kimmel issued check number 2549, drawn on Class Clothing, Inc., dated September 27, 1995, in the amount of $2,200.00 to the debtor.[5] However, debtor testified that before he could deposit check number 2549, Dr. Kimmel informed the debtor that he had stopped payment on the check. Thereafter, the debtor did not attempt to negotiate the check.[6]

In the Statement of Financial Affairs, "Question # 10. Other transfers," reads as follows:

List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case.

In response to this question, debtor answered "none", notwithstanding the transfer of the X-ray equipment. The debtor further failed to list the $1,900.00 balance owing on the sale of the X-ray equipment as an account receivable in response to Question 15 in Schedule B. In response to Question 15, debtor listed his interest in accounts receivables as $3,500.00 and indicated that this was the equivalent of debtor's wages or compensation. The debtor testified that this $3,500.00 was due for past services rendered and did not state that this represented any part of the $1,900.00 balance due on the X-ray equipment.

In addition to failing to disclose the sale of the X-ray equipment in his bankruptcy schedules, the debtor neglected to notify his accountant of the sale until faced with the current litigation. The debtor's 1994 federal tax returns did not reflect the income received from the sale of the X-ray machine. Cooper, the debtor's accountant, testified that it is not unusual for clients to neglect to inform his office of the sale of equipment at the time of sale.[7]

The debtor's 1994 federal income tax returns also inaccurately reflected a $2,000.00 tax deduction for business expenses taken by the debtor for the purchase of a new computer system and software. On December 29, 1993, the debtor wrote check number 2269 off of his business account and indicated on the check stub that the check was for the purchase of a new computer system. The

---

4. In its answer to debtor's amended complaint, Behrman provided that check number 2214, included an additional $200.00 for delay in payment.

5. The Court notes that check number 2549 is for an amount that is greater than the amount owing under the bill of sale. It can be assumed that the additional amount is for delay in payment thereof.

6. The Court notes that at trial the check was tendered to the Court, upon the Court's request, for submission to the Trustee.

7. Cooper further testified that the omission can be corrected by either amending debtor's 1994 tax returns or by including the sale in debtor's 1995 tax returns.

debtor testified, however, that he never purchased said computer and that he deposited the $2,000.00 check into his personal checking account, since he decided to borrow a computer from his sister for use in his business.

As aforesaid, the debtor specifically instructed Hodges, the appraiser, to exclude his office computer from the appraisal prepared in connection with debtor's case. According to the debtor, his sister, Mona Lisa Johnson (hereinafter "Johnson"), is the actual owner of the computer system that is currently being used in his office. Debtor responded "none" to "Question # 14. Property held for another person," which called for the disclosure of any property owned by someone other than debtor but which debtor holds or controls. However, if the debtor's testimony is to be believed, the debtor was in possession of his sister's computer at the time that he filed his bankruptcy petition, even though he had written a business check for $2,000.00 for the purchase of a computer in December of 1993.

The debtor also alleges that certain muscle stimulator equipment in his office belongs to Dr. Rodney Bailey, a fellow chiropractor. According to debtor, the muscle stimulator was not included in the appraisal prepared by Hodges because Dr. Bailey is merely allowing the debtor to borrow said equipment. Again, however, debtor did not list the muscle stimulator on his schedules as something held for another but in the debtor's possession and control in response to Question # 14 in the Statement of Financial Affairs.

It should be noted here that the debtor carried both the computer and the muscle stimulator on his tax schedules during the relevant times for depreciation purposes.

## II. *CONCLUSIONS OF LAW*

Based upon the foregoing, Behrman asserts that grounds for denying debtor's discharge exist under 11 U.S.C. § 727(a)(2)(A), (4)(A). These subsections provide as follows:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

\* \* \* \* \* \*

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

■ Upon the evidence presented and for the reasons stated below, the Court finds that debtor's discharge is due to be denied under section 727(a)(2)(A), (4)(A) of the Code for debtor's transfer/concealment of property and for debtor's knowing and fraudulent making of a false oath or account through a series of omissions from his Schedules and Statement of Financial Affairs and on the appraisal made by Hodges whereby:

1. The debtor failed to list certain property in his schedules.

2. The debtor neglected to disclose a transfer of X-ray equipment. The bill of sale was dated April 1, 1994 (one year and four days pre-bankruptcy) while debtor filed his bankruptcy petition on April 5, 1995. However, the debtor continued to possess and use the equipment; continued to receive payment for the same within the one year prescribed period; and did not actually transfer possession of same until November of 1994.

3. The debtor failed to disclose in his schedules the $1,900.00 accounts receivable balance resulting from the sale of his X-ray equipment.

4. The debtor failed to disclose in his schedules that he was holding a muscle stimulator, and a computer system for another.

5. The debtors testimony that the computer system belongs to his sister is not credible.

6. The debtor failed to adequately explain the diminution in value of his equip-

ment from $8,000.00 in November, 1994 to $708.00 in April, 1995.

■ To effectuate the fresh start policy, objections to discharge are strictly construed against an objecting creditor and liberally in favor of the debtor. *Kiester v. Handy (In re Handy)*, 164 B.R. 355 (Bankr.M.D.Fla.1994); *Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879 (Bankr.N.D.Fla.1993); *Armento v. Armento (In re Armento)*, 127 B.R. 486 (Bankr.S.D.Fla.1991). However, discharge is only available to honest debtors, and should only be applied liberally where there was no intent to violate the provisions of the law pertaining to discharge. *Island Bank v. Gill (In re Gill)*, 159 B.R. 348 (Bankr.M.D.Fla. 1993); *Weissing v. Levine (In re Levine)*, 139 B.R. 551 (Bankr.M.D.Fla.1992); *Barnett Bank v. Muscatell (In re Muscatell)*, 113 B.R. 72 (Bankr.M.D.Fla.1990).

■ In order to prevail on the question of dischargeability under section 727(a)(2)(A) of the Code, plaintiff must prove that a transfer/concealment of property occurred within one year of the petition date and that debtor undertook such conduct with the intent to hinder, delay or defraud his creditors. *Barthlow v. More (In re More)*, 138 B.R. 102, 104 (Bankr.M.D.Fla.1992); *Rosen v. Bezner*, 996 F.2d 1527 (3rd Cir.1993). Further, to prevail on an objection to discharge for false oath or account pursuant to section 727(a)(4)(A), the plaintiff must establish that:

1. debtor made a statement under oath;
2. such statement was false;
3. debtor knew that the statement was false;
4. debtor made said statement with fraudulent intent; and
5. that the statement was material to the bankruptcy case.

*First American Bank v. Bodenstein (In re Bodenstein)*, 168 B.R. 23 (Bankr.E.D.N.Y. 1994); *In re Armento*, 127 B.R. at 490; *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991).

■ To justify the denial of discharge under either section, the plaintiff has the burden of proving each element by a preponderance of the evidence. *Burgan v. Feder (In re Feder)*, 176 B.R. 957 (Bankr.M.D.Fla. 1994); *In re Handy*, 164 B.R. at 356. Once the plaintiff has established each element, the ultimate burden of persuasion shifts to the debtor to satisfactorily explain his conduct. *Phillips v. Phillips (In re Phillips)*, 187 B.R. 363 (Bankr.M.D.Fla.1995); *Menchise v. Vincent (In re Vincent)*, 159 B.R. 595 (Bankr.M.D.Fla.1993); *Vetri v. Meadowbrook Mall Co.*, 174 B.R. 143 (Bankr. M.D.Fla.1994).

First, the Court finds that debtor failed to offer any reasonable explanation in justification of his failure to indicate in response to Question 15, Schedule B that he was owed $1,900.00 for the X-ray equipment. Debtor's schedules clearly indicate that the $3,500.00 was for wages and compensation. Further, it is noteworthy that when he did receive the check of $2,000.00 from Dr. Bailey post-petition, that he did not turn the same over to his bankruptcy trustee or alert him to the account receivable.

■ Next, the Court will consider whether debtor intentionally transferred and concealed the transfer of said equipment and the account receivable resulting therefrom to hinder his creditors and whether debtor's failure to disclose the transaction in his bankruptcy petition constituted a false oath that was material to debtor's case. There is no dispute that debtor transferred the subject X-ray equipment to Dr. Kimmel; nor is there any dispute that debtor failed to disclose said transfer in his Statement of Financial Affairs. However, debtor argues that said transfer was not made within one year before the bankruptcy filing date or in the alternative that said transfer was made within the ordinary course of debtor's business.

■ The fact that the bill of sale is dated outside the one year period is not detrimental to Behrman's claim under section 727(a)(2)(A) [8]. Under the continuous con-

---

8. The bill of sale for the X-ray equipment was executed on April 1, 1994, while debtor filed the instant case on April 5, 1995.

cealment doctrine, the transfer or concealment will be found to exist within the one year period where said transfer or concealment continues within the one year period. *Thibodeaux v. Olivier (In re Olivier),* 819 F.2d 550, 554 (5th Cir.1987).

In this case, there is no dispute that debtor retained control of and continued to use the X-ray equipment during the one year period. *See Holland v. Sausser (In re Sausser),* 159 B.R. 352 (Bankr.M.D.Fla.1993) (holding that concealment of property can be accomplished by the transfer of property where debtor retains benefits of ownership). Moreover, debtor testified that he received payments from Dr. Kimmel during the one year period for said equipment. Thus, the Court finds debtor's argument that said transfer occurred outside the one year period unpersuasive.

■ The Court further finds debtor's argument that said transfer occurred within debtor's ordinary course of business unpersuasive. Debtor is engaged in the business of providing chiropractic services; debtor is certainly not engaged in the business of selling medical equipment. Therefore, the first two elements of section 727(a)(2)(A) have been satisfied with respect to the transfer of debtor's X-ray equipment.

■ Further, debtor's failure to disclose the transfer in response to Question # 10 in the Statement of Financial Affairs constituted a false oath within the meaning of section 727(a)(4)(A). Written declarations in bankruptcy petitions and schedules have the force and effect of oaths. Thus, for purposes of section 727(a)(4)(A), "false oaths" include statements or omissions in a debtor's schedules. *Ohio Co. v. Maynard (In re Maynard),* 162 B.R. 349 (Bankr.M.D.Fla.1993) (holding that debtor's omission from schedules of a pre-petition transfer constituted a false oath).

■ In addition to denying the allegation that he transferred the X-ray equipment with fraudulent intent and failed to disclose said transfer, debtor further denies the allegation that he concealed the computer system and muscle stimulator items which debtor instructed the appraiser to exclude from the appraisal. Debtor alleges that said items were not included in the sum listed on his schedules because said items are not actually owned by debtor. However, it is significant that neither the debtor's sister nor Dr. Bailey, whom debtor alleges are the respective owners of the computer system and muscle stimulator, was in Court to substantiate debtor's claim. The Court further notes that debtor did not proffer affidavits by either party to substantiate his claim. The Court is unwilling to accept debtor's self-serving testimony without further proof that debtor is not the owner of said items. However, even if debtor is not the owner of said items, debtor does not deny that he omitted to indicate in his Statement of Financial Affairs that he was holding property for another party.

■ Debtor further contends that the sum listed in his schedules includes the remaining items of property to which debtor claims ownership, but which were not listed in the appraisal prepared by Hodges. In his testimony, debtor noted that the value listed in the appraisal for debtor's office furnishings was $545.00 while the value listed in his schedules was $708.00. Debtor suggests that this $163.00 difference takes into account the hydroculator, transcriber, posture analyzer, office desk, and telephones, items which debtor specifically asked the appraiser not to include in his appraisal for use in connection with his bankruptcy. Again, debtor proffered no documentary evidence to justify his suggestion.

■ The purpose of the false oath exception is not to punish debtors for mere inadvertence, but, rather to insure that adequate information is available to the trustee and all interested parties. When determining whether a false oath will bar a debtor's discharge, the test for materiality is whether the false statement was related to debtor's business transaction or estate, or concerned the discovery of assets, business dealings, or existence and disposition of debtor's property. *Messing v. Urban (In re Urban),* 130 B.R. 340 (Bankr.M.D.Fla.1991); *Tavormina v. Van Den Heuvel (In re Van Den Heuvel),* 125 B.R. 846 (Bankr.S.D.Fla.1991). The false oath need not result in detriment to

creditors to be material because creditors are entitled to judge for themselves what will benefit them. *In re Levine,* 107 B.R. 781, 785 (Bankr.S.D.Fla.1989); *In re Kaiser,* 94 B.R. 779 (Bankr.S.D.Fla.1988); *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984). Instead, debtors must make full disclosure even of seemingly worthless assets. In the instant case, each of the above false oaths was directly related to and made in connection with debtor's business.

That leaves as the only element in question with respect to subsections 727(a)(2)(A), (4)(A), whether debtor conducted the above transactions with intent to defraud his creditors. Actual intent to hinder, delay or defraud is necessary to sustain an objection to discharge, however, actual intent may be proven by circumstantial evidence. *In re More,* 138 B.R. at 104. For purposes of denial of discharge, reckless disregard for truth is generally recognized as the equivalent of fraud. *In re Sausser,* 159 B.R. at 355. *Britton Motor Serv. v. Krich (In re Krich),* 97 B.R. 919 (Bankr.N.D.Ill.1988) (providing that debtor's reckless indifference for truth was sufficient to justify denial of debtor's discharge based upon debtor's transfer and concealment of property.)

Where a debtor makes numerous omissions from his Bankruptcy Schedules and Statement of Financial Affairs, said conduct may constitute a pattern of reckless disregard for the truth, warranting the denial of discharge. *In re Urban,* 130 B.R. at 344. Upon the evidence presented, it is the opinion of this Court that it was the intent of the debtor to transfer and conceal the subject property from his creditors and that debtor intentionally made false oaths in connection therewith. Debtor's unsubstantiated response that the sum listed in his schedules included all property owned by the debtor is not sufficient to satisfy debtor's burden of persuasion. Further, his explanation concerning his reason for instructing the appraiser to leave certain items off of the appraisal contracted by debtor specifically for use in connection with his bankruptcy case is not credible.

Moreover, debtor transferred the X-ray equipment approximately one month before being sued by Behrman in state court for breach of contract. Actual intent may be inferred by looking to "badges of fraud" in determining whether discharge should be denied in connection with the transfer or concealment of property. *Walters v. Sawyer (In re Sawyer),* 130 B.R. 384 (Bankr.E.D.N.Y. 1991). Acts taken by a debtor while debtor is under threat of suit by a creditor constitute an indicia of fraud. *In re More,* 138 B.R. at 105. Although debtor received adequate consideration for the transfer, the transfer occurred only one month before Behrman sued debtor in state court. Moreover, debtor continued to use and maintained control over the property for a substantial period of time and did not report or account to the Bankruptcy Court for the account receivable generated by the transfer. Further, debtor testified that he deposited the proceeds from the sale of his business equipment into his personal checking account.

The Court believes that when all of the debtor's actions are considered together, the evidence is sufficient to justify the denial of debtor's discharge. The Bankruptcy Code provides an opportunity for relief only for honest debtors faced with financial difficulties that they can no longer sustain without the help of bankruptcy. In this case, the debtor's conduct, at the very least, constitutes a reckless disregard for the truth, which is sufficient to deny debtor's discharge under section 727(a). The Court is convinced that debtor acted in a manner which is in violation of the spirit of the fresh start theory.

Thus in summary, the Court finds as follows:

(1) The circumstances surrounding the preparation of debtor's Bankruptcy Schedules and Statement of Financial Affairs, indicate a reckless disregard for the truth. The debtor employed an appraiser to value his office furniture and equipment in connection with his case, but instructed the appraiser to disregard certain items that were (a) located in debtor's office at the time of the appraisal; and (b) included in debtor's 1993 Federal Income Tax Returns.

(2) The debtor knowingly and fraudulently transferred X-ray equipment with the intent to hinder, delay and defraud his creditors, and committed a false oath by neglecting to disclose the transfer and the resulting accounts receivable created therefrom in his Schedules and Statement of Financial Affairs. When the debtor entered into the bill of sale for the subject property on April 1, 1994, debtor was faced with the underlying state court action in which Behrman sued debtor for breach of contract. Faced with this litigation, debtor sold an expensive item of office equipment; deposited the proceeds into his personal rather than business checking account; and neglected to disclose said transfer to this Court.

(3) In his petition, with intent to hinder, delay or defraud his creditors debtor failed to disclose a computer system and muscle stimulator which were not included in the appraisal prepared in anticipation of this bankruptcy case; alternatively, debtor failed to disclose that he was holding said items for his sister, Johnson, and a business acquaintance, Dr. Bailey, respectively.

Therefore, after careful consideration of the evidence, the Court is of the opinion that Behrman has satisfied its burden of proof on all of the elements of section 11 U.S.C. § 727(a)(2)(A), (4)(A). Accordingly, the debtor's discharge is due to be denied.

An Order in accordance with this opinion will be entered.